Case number 18-5465, U.S.A. v. Charles Oliver. Oral argument, 15 minutes per side. Mr. O for the appellant. May I please the court, if I may reserve three minutes for rebuttal. You may. My name is Peter O. I'm with the Federal Defender's Office from Memphis, Tennessee. And I represent Mr. Charles Oliver. This case involves gruesome facts. It involves allegations and conviction for distribution of child pornography in exchange of text messages that can best be described as graphic and explicit. And quite frankly, just difficult to stomach. But the issue that we're presenting to this court is really a more sanitary issue. It's about plain language, it's about statutory construction, and a straightforward application of the guidelines of the facts in the case. The guidelines enhancement of that issue is USSG 2G 2.2B 3B. It was amended effective November 1st of 2016, and here is how it presently reads. Quote, if the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain, increased by five levels. The commentary then goes on to define this phrase. The commentary states that that phrase that I just read means the defendant agreed to an exchange with another person, under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child. This is fairly new language still. I'm only aware of two courts that have attempted to dissect this commentary into elemental form. I provided a Rule 28J letter. The first is out of the Fifth Circuit. It's Halverson. And they articulate the elements thusly. First, and this is really the focus of our argument, that the defendant agreed to an exchange with another person. That's the first, and in our estimation, the predicate and most essential element for our discussion today. Two, the defendant knowingly distributed child pornography to that person. Three, for the purpose of obtaining something of valuable consideration. And four, the valuable consideration came from that person. Our position is that the District Court erred below in applying this guideline's enhancement. And I think it's apparent from the transcript itself. In response to Mr. Oliver's argument that the first element was not met, that there was no agreed to exchange with another person, the District Court first said, fine, there is no explicit agreement anywhere in the record. The District Court then went on to hold that there was, or find that there was an implicit agreement. Do you agree that the agreement could be implicit? I do. I do. There is no modifying language before the word agreed in the commentary. Therefore, I think we have to give it the broadest and most expansive interpretation, which includes both explicit and implied. But then in making its finding of an implicit agreement, the District Court reasoned that after having reviewed the texts in the record, that it found that Mr. Oliver's purpose in sending these messages was to seek access to a child, or to seek photographs of the child in return. So our position is quite straightforward. The District Court improperly conflated what we now know as the first and third elements of this enhancement in coming to its determination. The District Court said the first element is met because there was an implicit agreement, but in supporting, or in an attempt to support that rationale or that finding, it resorted to really a finding about what the third element under that enhancement would have showed. Quote, that the distribution was for the purpose of seeking valuable consideration. So if I could present a hypo, and you could tell me what you think about it. So we have an agent here, and we have your client, Mr. Oliver. So suppose that the agent says that the agent, this is an undercover agent, says he won't go forward with producing the young girl unless Oliver shows that Oliver is not a police officer, because the agent is pretending that he's worried Defendant Oliver is a police officer. So Oliver then sends child pornography to the agent to show that Oliver is not an agent of the police, not a cop. So wouldn't that show an agreement implicitly between the two of them, the actual agent and Oliver? And Oliver would be having the purpose of producing the child pornography, giving it to the police officer agent undercover person for the purpose of showing that Oliver is not an agent so that Oliver can get access to the girl. I think that would present a closer question. I'm not willing at this point to concede the issue, but I think the court's assessment is closer. If the officer were to say, I need you to produce child pornography or some illicit image to me to prove to me that you're not a cop, and then I will produce access to a child, and if Mr. Oliver were to have produced the image in response to that explicit or to that exchange, I think the court could have come to a closer finding. But that's an explicit agreement. And you've agreed that an implicit agreement could satisfy. And so what I'm wondering is why, and I would worry under your hypo that that would be entrapment by the agent. Say, show me child pornography. Isn't that arguably at least entrapment? I think that could be entrapment. I think in going back to the court's hypothetical, I think that if Mr. Oliver had sent child pornography in response to that urging from the officer, then there might be a better argument that there was an agreed-to exchange between these two individuals. Well, so my hypo and the reality of this case is that the undercover agent is pretending to be worried that Oliver is a cop and is hesitant to produce his pretend little girl and says, how do I know you're not a cop, Mr. Oliver? And Oliver says, well, here's some child pornography, and a cop wouldn't send child pornography, so you know I'm not a cop. And why isn't that an implicit agreement? My understanding of the record is slightly different from the court's. I think there are only actually two specific instances of the distribution that we see in the sentencing record. The first occurred on April 7th of 2017. Mr. Oliver sent his very first transmission to the government or to the undercover officer, and it was just an image of a prepubescent female without any other text messages. That certainly is gratuitous. The other exchange that we see is at some unidentified or unspecified time, Mr. Oliver says to the officer, can I see a picture of your little girl? And the officer resists. Mr. Oliver then sends a picture, I think, of himself and then a child pornographic image. But the officer still does not produce a picture of his fictitious minor daughter. So I think the government itself even characterized that exchange as an instance where Mr. Oliver was trying to persuade the officer to act, to persuade him out of his reluctance, I think was the phrase, and that's really a rough summary. But what we see there is that even in that instance, we don't have an agreed-to exchange where there was an agreement between both parties that the child pornography would be sent. There is some disagreement, though, as to how many exchanges. Doesn't the PSR kind of refer to 25? It does, Your Honor. And this dialogue, at least, it's really just one. So do we have all the dialogue, or is there 25? Where does that come from? There are 25 images that were transmitted during the course of a four-month period. There were also 11 videos. That was admitted at sentencing because we did not object to that assertion. But as far as the actual texts themselves and the actual distribution, those were not before the district court. The only two actual distribution instances that we see in clear and specific detail is the first one, April 7, 2017, where I think it was agreed that it was just the image itself, and then the second one where Mr. Oliver sent an image attempting to get a return image of the daughter, but no image was forthcoming. Certainly, under that circumstance, there was no agreement to an exchange between the two individuals. So I do understand the Court's hypothetical, but I think our position would be that the facts of this specific case and what was before the sentencing court did not rise to the level of an agreement or an agreed-to exchange between one person and the other. So there are two levels, I suppose, to your objection. One is that the district court didn't make a finding that there was an agreement because she was focused on purpose. Yes, Your Honor. So if we thought that agreement was essential under the new terms of the new guideline, would the proper remedy be to send it back for the district court to be allowed to make a finding? I think that is the proper remedy, Your Honor. I wish it weren't so. I wish this Court could rule in our favor. But I think the appropriate remedy would, if that were the instance, would be remand with the opportunity for the district court to consider the analysis anew. And then would both parties have the right to provide evidence on the topic? In other words, it's a relatively new guideline and maybe the parties were not as focused on the agreement part in the past. I would hate to concede the issue, but I think just based on my practice and understanding, I think both parties, both sides would be allowed to introduce or admit additional evidence as it solved it. I think I still have additional time. One of the things also that we stress about the plain language and the strict application and strict construction is this word expectation. That was in the prior, pre-2016 version of the guidelines. That controlled much of the case law that arose prior to 2016, starting with the Second Circuit's decision in United States v. Maneri. There, the district courts and the courts construed the enhancement much more broadly than they are now allowed to. The expectation has been described as something anticipation, looking forward to. So it allowed for the enhancement to apply even when the perpetrator, in this case Mr. Rahler, had a unilateral expectation of what his transmission of the trial pornography might produce. Our position is quite straightforward, that the guidelines, as they were amended, effective November 1, 2016, as it applies to us, requires a far more stringent requirement. That was not met in our case. The other plain language issue that I think we raised in our brief is this word exchange. We described this enhancement as the exchange enhancement because it's critical not only in the guidelines body, but also in the commentary. And we cite to Webster's Third New International Dictionary in its interpretation of that word exchange. Webster's described it as the act of giving or taking one thing in return for another as if equivalent, or the act of substituting one thing in the place of another. Black's also gives it a similarly restrictive definition, the act of transferring interests, each in consideration for the other. When we see this new word that's operating now, exchange rather than expectation, it is a far more stringent enhancement. The burden of proof is higher. It was not met in this case. And I see that my time is up, and I'll wait for the three minutes of rebuttal.  Thank you, Your Honor. Thank you. Good afternoon. May it please the Court. Casey Weiland on behalf of the United States. In this case, the district court properly applied a five-level sentencing enhancement for distribution of child pornography in exchange for valuable consideration. The district court did make a factual finding, specifically finding that an implicit agreement to distribute child pornography in exchange for a thing of value was evident from the record. This finding was not clearly erroneous, and this court should affirm. When we look at the factual record before the district court, context is important. Ms. Rowe has made reference to the defendant in this case, his first transmission of child pornography to the undercover, as being an e-mail with an image of child pornography attached to it, devoid of any other content. This should not be considered in a vacuum, but rather in the context in which it arose. What we know from the facts before the district court are that Mr. Oliver went online into an Internet chat room, specifically looking for and soliciting information about somebody who could provide him access to a minor for sex. An informant in that chat room provided Mr. Oliver with contact information for an undercover law enforcement officer who was posing as a father with a six-year-old daughter who was willing to make that minor available for a sexual encounter. Upon receiving that contact information, Mr. Oliver almost immediately initiates contact with the undercover in the manner that Ms. Rowe has described. What we see from this context is that Mr. Oliver's specific purpose in initiating contact with the undercover was to facilitate this sexual encounter, and all of the communications between them from that point forward, including the dissemination of child pornography, were directed toward achieving that result. When we look at the content of the chats, what we see is, in essence, a negotiation of the particulars of this agreement. There is discussion about when it will take place, how quickly it can take place, whether it would take place in Mr. Oliver's van or a hotel room, whether it would be rough or gentle, whether the undercover would be allowed to take videos or photographs of the encounter. But the problem is this particular language of the guideline, if the defendant distributed in exchange for any valuable consideration, and then the meaning of it in the commentary, which is where you really get to the heart of this. The defendant distributed in exchange for any valuable consideration means that the defendant agreed to an exchange with another person, and then it goes on. So where is the agreement? Now, I know your opponent has said it doesn't have to be an explicit, I agree with you to do this in exchange for that. But where is the implicit agreement here? Your Honor, the implicit agreement in this case is the agreement between Mr. Oliver and the undercover to arrange for this sexual encounter with a minor. What we see in the course of the chats is that what each side is seeking from the other before executing this agreement is, as your Honor pointed out, assurance from the other that the person he's corresponding with is not a police officer and that they can be someone who can be trusted, someone who is actually interested in meeting for a sexual encounter. When we look at, your Honor has pointed out, the language of the guideline itself, I would note that the word agreement does not actually appear in the text of the guideline. All that the plain language of the guideline requires is that the defendant distribute in exchange for valuable consideration. And the government's position is quite simply that such an exchange could occur, and in fact in this case did occur, in the absence of an explicit quid pro quo. Now an agreement is certainly still part of the analysis, but the district court did make a finding, and I would direct the court to page 274 of the sentencing transcript. The district court specifically said that no explicit agreement was articulated by the parties, but that an implicit agreement was evident from the record. So what are you saying is the implicit agreement? The implicit agreement is this agreement about arranging between Mr. Oliver and the undercover to meet and facilitate a sexual encounter for Mr. Oliver with the minor. I think it's... So that they agreed, but we have to have under the commentary, we have to have the defendant agree to an exchange with another person, under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something valuable from that other person. Yes, Your Honor. Let me try to express it a little more clearly what the government's position is on this point. In essence, the undercover, when we think about an agreement, we generally are thinking about it in terms of contract law, offer and acceptance. And I think Mr. O's position is that, well, Mr. Oliver never said, I will send you child pornography if you give me access to your child for sex. I think we have to think about it in a sense in the reverse. When Mr. Oliver initiates contact with the undercover, the offer is already out there. The premise is that this is an individual who has offered to make a child available for sex. Now, what he is seeking... Wait a minute. It was the agent who offered, right? Correct. Yes, Your Honor. And what he is seeking from the defendant in return is not explicitly, I will facilitate this transaction if you send me child pornography. What he does seek, and what Your Honor has already hinted at, is assurance from Mr. Oliver that he is someone who can be trusted. And the way that Mr. Oliver seeks to provide that assurance is by disseminating these images of child pornography. And when he did so, he was doing it for the specific purpose of getting something of valuable consideration from this other person, namely a sexual encounter with the minor. And the district court specifically relied on the content of the chats between them as being evidence of Mr. Oliver's specific purpose and as reflecting this implicit agreement. I think it's important to note that several courts applying the pre-amendment version of this guideline found that this enhancement was warranted in factual circumstances that are very similar to the ones we have before us. And actually, before I move on to the case, I want to address one other question that Your Honor posed to my opposing counsel, and that was the hypothetical. Because really, it goes to what the government is saying here about the seeking of assurance. And the hypo that Your Honor posed to opposing counsel is actually almost verbatim from the record in this case. And I would direct the court to page 92 of the district court record, where the undercover says, I've got to be careful. I'm still not sure about you if you're real and not a wanker or the cops. Those were the undercover's words. And just as Your Honor posited, Mr. Oliver's response to that was, I'm real and not a cop. A cop wouldn't be sending you this. And he transmits an image of child pornography. So I think that is, again, what we can look to and see evidence of this implicit agreement. So is the implicit agreement then, in actuality here, that the officer agent is concerned as to whether, pretend concerned, as to whether Mr. Oliver is a cop or not, asking for assurances, but not explicitly trying to entrap Oliver, saying, hey, how can I trust you? Oliver then says, here is child pornography. This shows I'm not a cop, and therefore you should perform your part, agent, and provide your child. Yes, Your Honor. Now, did the district judge find that explicitly? I don't see that in her. I'm looking at 274 and 275 of the record, and it looks to me like she's focusing more on the specific purpose of Mr. Oliver as opposed to the question of whether there's an agreement or an exchange. Well, Your Honor, it's clear that the district court did discuss Mr. Oliver's specific purpose, and I think that that makes sense when we're thinking about it in terms of an implicit agreement where the terms are not explicitly articulated by both sides. Some of the things that we look at to determine what is this implicit agreement is what the parties say and what the party's specific purpose is in their actions and in their words. What's the harm in sending this back if we come up with a test, which is the next question for you, if we come up with a test that's somewhat different from the district court's, what's the harm in sending it back for her to make explicit findings applying the test? Your Honor, I don't know that there is necessarily any harm. The government's position is simply that the district court made a factual finding in this case and that there is ample support for that finding in the record. When we look to the existing body of case law, which I was getting to just a moment ago, and the cases that applied the enhancement in factual circumstances very similar to this, I would acknowledge that those courts did, as my opposing counsel has pointed out, not rely in part on this expectation of receipt language that at that time appeared in the text of the guideline. But in understanding the significance of the amendment on this existing body of case law and determining to what degree the court can still rely on this earlier line of cases, I do think it's appropriate and important to distinguish in the body of case law between those cases that arose in the peer-to-peer context, which is specifically the body of cases that the Commission was concerned with when it drafted this amendment, and cases that arose outside the peer-to-peer context. The reason we know that's appropriate is when we look to the commentary that accompanied that 2016 amendment, what we see is that the Commission was specifically concerned with the differences among the circuits in determining the proper mental state that needed to be found in order to apply this five-level enhancement versus the two-level enhancement for other distribution. Do you advocate that we adopt the Halverson test from the Fifth Circuit or not? Your Honor, to the extent that the Halverson, and again, I would just note for the record that Halverson was a case that arose in the peer-to-peer context, so I think it's only marginally helpful for our purposes here. To the extent that Halverson basically tracks the language of the application note, the government does not necessarily disagree with that portion of the court's analysis in Halverson. Where the government does take some issue is with this imposition of what appears to be a fourth requirement, which is that the defendant actually receives some consideration from the other person. So looking, Halverson has a four-part test, and you're saying that you would not recommend inclusion of the fourth part to that test? That's correct, Your Honor, and that was reflected in the court. It's a district court case out of the Middle District of Tennessee, the Taylor case, which I believe is also referenced in Mr. O's 28J letter. That was a case where the court, and that case importantly arose outside the peer-to-peer context. In that case, the court basically adopted the Halverson test but said that it did not agree with this fourth requirement in Halverson where they were basically reading in an additional requirement that the defendant actually receive valuable consideration from another person. So again, to the extent that Halverson basically tracks the language of the application notes, the government does not necessarily disagree with that analysis, but that fourth requirement I believe is reading something into the guideline that does not appear on its face. Going back to the commission's concerns that are articulated in that commentary, what I would point out is that the commission specifically said that this amendment was an appropriate way to deal with the higher level of culpability when you have a defendant who knowingly distributes to another person for the specific purpose of obtaining something of valuable consideration from that other person. If the court is unfamiliar with the way peer-to-peer networks operate, I think a very, very brief explanation helps to explain the context in which this arose. Peer-to-peer networks are essentially a network of connected computers. A user is able to go onto the network, search for files that are of interest to them, locate on the network these files that other users have designated from their own computers as being available for sharing, and basically with the click of a button initiate a download of that file to their own computer. A user also has the option of designating files on his or her own computer as being available for sharing, but does not necessarily have to do so. So what we see is that inherent in the use of peer-to-peer networks is this expectation that the user is going to obtain files of interest to them. And what the Commission observed was that there were courts, the Fifth Circuit and I believe the Eighth Circuit, that were applying essentially a per se rule and finding that the knowing use of a peer-to-peer network gives rise to this expectation contemplated in the earlier version of the guideline and was therefore sufficient in and of itself to trigger the application of this five-level enhancement. And the Commission was essentially saying when a defendant passively makes files available in this manner, it is a much different level of culpability than when you have a defendant who is actively engaged with others and exchanging to another person for the specific purpose of getting something from that other person. An example may be helpful. Geiner was a Tenth Circuit case, a peer-to-peer case, in which the defendant initially did not have the sharing function on his peer-to-peer software enabled. At some point he did, I see that my time has expired. If the court would like me to stop, I can or I could briefly finish my example. Maybe you can wrap up in 30 seconds. Yes, Your Honor. In that case, the defendant enabled the sharing feature on his peer-to-peer software and did so because that would give him priority trader status, which would give him faster downloading capabilities. The court said that that was sufficient to give rise to an expectation that he'd be receiving a benefit in exchange for his sharing, and that was sufficient to trigger the enhancement. Geiner would come out completely differently under the current scheme because we see that he didn't agree to an exchange with another person. He didn't distribute knowingly to another person for the specific purpose of getting something from another person. Okay. Thank you, Counsel. Thank you, Your Honor. Appreciate your argument. Mr. O? Thank you. Just two brief points, Your Honor. The government raised this specific exchange where there was a discussion about whether Mr. Oliver was a cop or not. That appears on pages 7 and 8 of the appellee brief. Electronic stamp pages 11 and 12. That's where Mr. Oliver starts off by saying, Do you mind if I seen her? Really requesting, I guess, a picture of the fictitious daughter. This is what I have for her. The cop says, I've got to be careful. Still not sure about you. And then he says, when I say he, Mr. Oliver, I'm really not a cop. A cop wouldn't be sending this. And that's when he sends the image of child pornography. It's undisputed, however, at the end of the exchange, the officer never gave to Mr. Oliver what he had been seeking. An image of the fictitious daughter. It's very difficult, I think, when we look at the natural and plain language to say that this was evidence of an agreed-to exchange. What Mr. Oliver asked for, he never received. It has to be a bilateral agreement that there will be receipt or taking or giving or taking of one thing in return for another. It got down to the point of disputing where they would perform the act. I mean, you can't let this guy actually rape a little baby, but they got right down to, do we do it in a truck or do we do it in a hotel? Isn't that enough? I think that exchange is horrific. And it goes, I think, to the government's argument about higher levels of culpability. But our response to that is also equally straightforward. First, there's a mechanism that is available to the district court for higher levels of culpability. And that's the third of the three factors. Even after you properly set the appropriate guidelines range, the district court, in its discretion, looking at the nature and circumstances of the offense, can adjust the sentence accordingly. But it is procedural error to start from the wrong guidelines range. And in this case- Does it affect your, are you not arguing for that fourth factor of the Halverson case? It is, Your Honor, because that's what requires that the actual consideration come from the other person. It's a combination of the first and the fourth, because it's from the agreement for the exchange that the consideration comes. So I think the answer to that is yes. It's a combination with the focus first, with the predicate first element. I think the fourth element naturally wraps into that. But it is the agreed-to exchange language that is at the heart of our argument. And I do understand the court's concerned about higher levels of culpability, the graphic and explicit nature of what occurred here. But we're asking for a strict application of the guidelines and its commentary. And absent ambiguity or absurdity, the plain language has the control. Thank you. Okay, thank you, Mr. Oh and Ms. Weiland, for your arguments this afternoon. The case will be submitted. I think that completes our oral argument calendar for the afternoon. You may adjourn court.